Paul David MOLLENHOUR *v.* The STATE FIRST NATIONAL BANK of Texarkana

CA 88-309                                            769 S.W.2d 28

Court of Appeals of Arkansas
Division II
Opinion delivered April 19, 1989

*Matt Keil*, for appellant.

*Smith, Stroud, McClerkin, Dunn & Nutter*, by: *Winford L. Dunn, Jr.*, for appellee.

JAMES R. COOPER, Judge. This appeal follows the entry of a judgment for the appellee, State First National Bank of Texarkana, against the appellant, Paul David Mollenhour, on a promissory note and two revolving credit notes. On appeal, the appellant argues that the chancellor erred in holding him individually liable on the two revolving credit notes. We affirm.

In 1983, M. J. Rogers and the appellant agreed to go into business together. Rogers apparently sought Mollenhour's involvement in the business, Arkansas Parts and Equipment Company, Inc., so that Mollenhour could obtain financing for the business from the appellee. A substantial portion of the financing provided by the appellee to Arkansas Parts and Equipment was evidenced by the two revolving credit notes dated April 1, 1986, in the amount of $33,000.00, and February 19, 1986, in the amount of $150,000.00. The April 1, 1986, note was signed as follows:

ARKANSAS PARTS & EQUIPMENT CO., INC.

by:     /s/ Mike Rogers

Mike Rogers, President

by:     /s/ Mike Rogers

Mike Rogers, Individually

by:     /s/ Dave Mollenhour V. Pres.

Dave Mollenhour, Vice
President & Secretary

/s/ Dave Mollenhour V. Pres.

Dave Mollenhour, Individually

The signature on the February 19, 1986, note appeared as

follows:

|  | ARKANSAS PARTS & |
|---|---|
| /s/ Mike Rogers | EQUIPMENT CO., INC. |
| Mike Rogers, Individually | |
| | by: /s/ Mike Rogers Pres. President |
| /s/ Dave Mollenhour V. Pres. | Mike Rogers, |
| Dave Mollenhour, Individually | |
| | by: /s/ Dave Mollenhour V. Pres. |
| | Dave Mollenhour, Vice President |
| | & Secretary |

Both notes stated that the signing parties were obligated "jointly and severally" to the appellee. The notes were not fully repaid, and the appellee sued Arkansas Parts and Equipment, Rogers, and the appellant for the balance due, alleging that Rogers and the appellant cosigned and guaranteed the notes. The appellee sought judgment against Arkansas Parts and Equipment, Rogers, and the appellant, jointly and severally. In his original answer, the appellant admitted that he had cosigned and guaranteed the notes, but he affirmatively stated that he was fraudulently induced to execute the instruments by the appellee. The appellant did not deny that he was individually liable on the notes, nor did he assert that he had signed the notes only in a representative capacity as vice president of Arkansas Parts and Equipment. The appellant filed a counterclaim alleging that he was fraudulently induced into executing the notes. He later filed an amended answer, but again he did not raise the issue of individual capacity.

At trial, the appellant attempted to raise the issue of lack of individual capacity in the execution of the notes through the testimony of the appellee's witness, John Dalby, assistant vice president and commercial loan officer of the appellee, and through the testimony of Mike Rogers and Nell Nassoy. Each time the appellant sought to introduce evidence through these witnesses regarding his intent to sign the notes only in a representative capacity, the appellee objected, and the chancellor sustained the objection. The appellant made a proffer of evidence through the testimony of Mike Rogers. The substance of the proffer was that the appellant informed him, prior to the execution of the notes, that he did not intend to sign them in an

individual capacity. The appellant also made a proffer of evidence through Nell Nassoy to the same effect.

The appellant, over the appellee's objection, testified in a proffer of evidence that he only signed the notes in his capacity as vice president and that he did not intend to sign them in an individual capacity. The chancellor, however, continued to rule that the evidence regarding the appellant's capacity in executing the notes was inadmissible. The chancellor later reversed his ruling with respect to the appellant's testimony regarding his signatures, and allowed the presentation of further testimony on the issue. At that time, the appellee offered into evidence a portion of the appellant's deposition, dated May 2, 1987, in which he was asked whether it was his understanding that he was personally responsible for each of the loans. He responded that he "assumed they would probably be." The appellee also introduced the bank's loan renewal documents maintained by the bank regarding the loans, which indicated that the notes were signed by the appellant in his corporate and individual capacities.

On June 2, 1988, the chancellor entered judgment for the appellee against Arkansas Parts and Equipment and the appellant for $33,000.00 and $150,000.00, plus attorney's fees and costs, and denied the appellant's counterclaim. In the judgment, the chancellor found that the appellant signed the notes in his corporate and individual capacities and that his designations of his corporate capacity, which he placed after his signatures on the individual signature lines, were merely descriptive designations or terms, because he had already signed in his corporate capacity on the appropriate lines. The chancellor also found that the appellant, having failed to affirmatively deny his individual liability by pleadings, conduct, or testimony, was estopped from denying his individual liability. From those decisions comes this appeal.

For his first point on appeal, the appellant argues that the chancellor erred in holding him individually liable on the two revolving credit notes; for his second point, he argues that the chancellor erred in holding that he failed to raise the issue of lack of individual liability. Because the view we take of the case makes it unnecessary to reach the second point, and because we do not find the chancellor's decision on the first point to be clearly

erroneous or against the preponderance of the evidence, we affirm the judgment.

As to the second point raised on appeal, it is true that, until trial, the appellant did not raise his defense of lack of individual capacity in the execution of the notes. As noted earlier, the chancellor first denied the appellant's attempts to present evidence on this issue at several'points throughout the trial. Later in the trial, however, the chancellor reversed his ruling excluding the proffered testimony and allowed the appellant to introduce additional evidence on this issue. It does not appear that any of the appellant's proffered evidence was excluded from the record. It is, therefore, arguable that the chancellor considered, at least at trial, that the pleadings had been amended to conform to the proof on this issue. *See Mercer* v. *Nelson*, 293 Ark. 430, 738 S.W.2d 417 (1987); *Miller* v. *Jasinski*, 17 Ark. App. 131, 705 S.W.2d 442 (1986); *Hegg* v. *Dickens*, 270 Ark. 641, 606 S.W.2d 106 (Ark. App. 1980); Ark. R. Civ. P. 15(b). The confusion arises from the holding in the judgment that the appellant was estopped from denying his individual liability. We cannot tell whether the chancellor, after trial, reversed his ruling concerning the originally excluded evidence and did not consider it, or whether, even if he considered it, he found, on all the evidence, that the appellant was individually liable. Accordingly, we have reviewed the record *de novo*, and we have considered all of the evidence proffered by the appellant, including that originally excluded by the chancellor. Even when all of the appellant's proffered evidence is considered, however, we hold that the chancellor's decision on the merits was correct.

Turning to the merits, the appellant argues that the chancellor erred·in holding him individually liable on the notes because, he asserts, under Ark. Code Ann. Section 4-3-403 (1987), adding the term "V. Pres." after his signature on the line for his individual signature on the notes, established that he only signed the notes in his representative capacity. We do not agree.

In *Cleveland Chemical Co. of Arkansas, Inc.* v. *Keller*, 19 Ark. App. 7, 716 S.W.2d 204 (1986), an action was brought against the appellee based on a guaranty signed by the appellee to secure a corporate line of credit. The lower court dismissed the appellant's complaint, finding that the appellee had signed the

guaranty only in a corporate capacity and not individually. There, Keller, the primary shareholder and president of Keller Chemical Company, signed a guaranty as follows: "KELLER CHEM. CO., BY: M. G. Keller." 19 Ark. App. at 8, 716 S.W.2d at 205. We reversed on the basis of Ark. Stat. Ann. Section 85-3-403(2)(b) (Add. 1961) because there was no evidence, other than Keller's own statement, that he intended to sign the guaranty in a representative capacity. We stated:

> Additionally, the definition of a guaranty would indicate appellee signed in an individual capacity. A guaranty is a collateral undertaking by one person to answer for payment of a debt of *another* and the undertaking of the principal debtor is independent of the promise of the guarantor. *First American National Bank* v. *Coffey-Clifton, Inc.*, 276 Ark. 250, 633 S.W.2d 704 (1982). If the appellee had signed in a corporate capacity, appellant would have had the guaranty of the corporation to pay its own debt for which it was already obligated; if such were the case, there would have been no need for the guaranty, nor would it have met the standard definition of a guaranty.

19 Ark. App. at 8-9, 716 S.W.2d at 205.

In the case at bar, the facts are distinguishable from those in *Keller*, and they are not specifically addressed by the code section. Section 4-3-403(2)(b) does not control a situation where a debtor's clearly representative signature is supplemented by an additional signature designated "individually" by the lender but onto which the debtor has added his corporate title. Here, the appellant signed his name after the name of the company, in his corporate capacity, and he also signed on an additional line designated for his individual signature. On the line designated for his individual signature, he added the title "V. Pres." The appellant argues that, because under Ark. Code Ann. Section 4-3-118 (1987), handwritten terms control typewritten and printed terms, the word "individually" is not controlling. We disagree.

As in *Keller*, it is different to understand why the appellee would have loaned the money to Arkansas Parts and Equipment only after the appellant was brought into the business as an additional investor if it was not intended that he be individually

liable for the notes. Further, if it was not intended that the appellant be personally liable, there was no reason for the appellee bank to require his signature in two places on each note, once in a corporate capacity and once in an individual capacity.

We believe the case *Bank of Corning* v. *Nimnich*, 122 Ark. 316, 183 S.W. 756 (1916), is particularly helpful. In that case, the appellant bank sued the appellees, Joseph Nimnich and Earnest Hartwig, directors of Farmers Union Gin & Warehouse Company, for the balance due on a promissory note which provided:

$5,000.00             Corning, Ark., Sept. 27th, 1911.

Six months after date for value received, we promise to pay to the order of the Bank of Corning, Corning, Ark., Five Thousand Dollars.

With interest at ten per cent per annum from date until paid. The makers and endorsers of this note hereby severally waive presentment and payment, notice of non-payment, protest, and consent that time of payment may be extended without notice thereof.

Payable at Bank of Corning, Corning, Ark.

Farmers Union Gin & W.H. Co.,
     Per Henry Brown, Sec. & Treas.
     Henry Brown, Director.
     W. T. Griffith, Director.
     Earnest Hartwig, Director.
     Porter Larkins, Director.
     G. A. Hoffman, Director.
     J. T. Montgomery, Director.
     H. D. Chappell, Director.
     Joseph Nimnich, Director.

122 Ark. at 317-18, 183 S.W. at 757. The appellees Nimnich and Hartwig answered and denied that they had executed the note individually, and the chancellor agreed. The supreme court reversed on appeal and found that:

(1) . . . [T]he rule is established by what appears to us to be the weight of authority that where the name of the corporation itself is signed and followed by the names of

officers, giving their official title, indicating that they are signing in their official capacity for the purpose of attesting the signature of the corporation, the instrument constitutes the obligation of the corporation alone. [citations omitted]

(2) Instruments of that kind are held to be the promise of the corporation and the signatures of the officers to be official and not individual. The authorities are, as before stated, not harmonious on this subject, and appellant cites on its brief, cases which hold to the contrary. The real question in the present case is whether or not the established rule is applicable to the instrument involved in this controversy. An inspection of the instrument, as it appears in the records, shows that the name of the corpoation was attested by Henry Brown, the secretary and treasurer. The additional signature of Henry Brown follows his signature as secretary and treasurer, and after it is written the word "director," and all of the other names are followed by the same word. We do not think that it can be said from the face of the instrument that those who signed as directors did so for the purpose of officially attesting the signature of the corporation, which had already been attested by the secretary and treasurer. The form of the signatures evidences an intention to add something more than a mere certification of the corporate name, and the addition of the word "director" is merely descriptive of the person who signed.

122 Ark. 318-19, 183 S.W.2d at 757.

In the case at bar, based on the wording and structure of the notes, we agree with the chancellor in his finding that the appellant's additions of the handwritten title "V. Pres." after his signatures on the lines designated "individually" were merely descriptive.

In addition to the language of the notes, the other evidence introduced at trial supports the chancellor's finding that the appellant signed his name to both notes in corporate and individual capacities. *See United Fasteners, Inc. v. First State Bank*, 286 Ark. 202, 691 S.W.2d 126 (1985). First, it is clear from the evidence presented that the bank would not loan the money to Arkansas Parts and Equipment or to M. J. Rogers

without the appellant's individual signature. Second, after the company defaulted on the notes, the appellant and Rogers unsuccessfully offered to pay out the indebtedness individually. Third, the bank's renewal documents clearly indicate that the loans were made on the basis of the appellant's individual and corporate signatures. Finally, in his deposition, the appellant admitted that he had considered himself individually liable on the notes. Because the chancellor's finding, that the appellant signed the notes in both his individual and corporate capacities, is neither clearly erroneous nor against the preponderance of the evidence, we affirm the judgment.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.